IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MEREDITH L. JANSEN, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO: |
| | ) | 1:06-cv -403-WHA-VPM |
| | ) | |
| VS. | ) | |
| | ) | |
| NCO FINANCIAL SYSTEMS, INC., | ) | |
| AND RAY MCGHIE, INDIVIDUALLY, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER

Defendant, NCO Financial Systems, Inc. ("NCO") submits this memorandum in opposition to plaintiff, Meredith L. Jansen's Motion to Compel, or alternatively, respectfully requests the Court enter a protective order pursuant to Fed. R. Civ. P 26(c). Plaintiff served NCO with discovery requests containing requests for documents that NCO maintains are confidential and proprietary. In its discovery responses and in subsequent discussions and correspondence, NCO agreed to produce the requested information in exchange for a confidentiality stipulation to prevent disclosures outside this proceeding. Plaintiff refused to

stipulate to confidentiality and filed this motion to compel production.

## FACTS AND PROCEDURAL HISTORY

On May 4, 2006, plaintiff filed her complaint against NCO, and on May 15, 2006, she served the same on NCO. On May 9, 2006, plaintiff amended her complaint against NCO, and on May 19, 2006, she served the same on NCO. Plaintiff contends that NCO violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* and the bankruptcy discharge injunction by contacting her to collect a debt. *See* Docket No. 1 & 3. NCO answered the lawsuit on June 5, 2006, denying liability and asserting defenses. *See* Docket No. 5.

On August 6, 2006 plaintiff served discovery requests on NCO. In the discovery requests, plaintiff requested all documents and items pertaining to debt collection, including all corporate training manuals, instructions, regulations, documents, books, records, and memoranda concerning collection from consumers. On September 19, 2006, NCO timely responded to plaintiff's discovery requests.

With regard to the requests to produce the aforementioned items (which are the subject of the motion to compel), NCO, to the extent it could determine which documents and items were responsive and relevant, agreed to produce its debt collection training manuals and debt collection policies and procedure manuals upon execution of a mutually agreeable confidentiality agreement.

The purpose of such an agreement would be to limit the use of documents declared confidential solely to this litigation. Plaintiff would be able to share confidential documents with counsel, counsel's staff, court personnel, and any experts; however, plaintiff would not be permitted to disclose the documents or information therein to any other third party. Plaintiff refused to sign the confidentiality agreement and instead filed a motion to compel.

## STANDARD FOR DISCOVERY

While Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party, the scope of permissible discovery is not unlimited. Rule 26(c) recognizes that the right of discovery is not unlimited. "The court is given broad power to control the use of the process and to prevent its abuse by any party." *Ex parte Knox Kershaw*, 562 So.2d 250, 253 (Ala. 1990). "Moreover, the trial court's role is to exercise its broad discretion in a manner that will allow full disclosure of relevant information and at the same time afford a party maximum protection against unnecessary disclosure." *Id., citing Ex parte Guerdon Industries, Inc.*, 373 So.2d 322 (Ala. 1979).

## LAW & ANALYSIS

In her motion to compel, plaintiff requests NCO to produce documents in response to the following Requests for Production of Documents:

**RFP No. 8:** Any and all collection manuals, all written procedural instructions and regulations regarding and governing collection activities, collection procedures, and collection practices utilized by the Defendants for the three (3) years prior to the filing of the lawsuit herein.

**Response To RFP No. 8:** NCO objects to this interrogatory as vague, ambiguous, overbroad, burdensome, and seeking irrelevant information that is not likely to lead to the discovery of relevant evidence. Notwithstanding said objections, NCO will produce, without limitation, a copy of its confidential and proprietary corporate training materials and collection procedures upon execution of a confidentiality agreement.

**Reason why RFP No. 8 is objectionable**: NCO is in the business of debt collection; therefore, virtually every manual, instruction, and regulation is "regarding and governing collection." Plaintiff's Request places the arduous and improper burden of determining what is and is not "regarding and governing collection." Second, only those policies and procedures related to the handling of bankruptcy and/or attorney representation notification are relevant to this lawsuit. Additionally, this Request requires the production of proprietary and confidential documents and items.

**RFP No. 9:** Each and every manual, collectors' handbook, document, book, record, instruction, regulation, and memoranda concerning collections from consumers, and collections on consumer accounts, including, but not limited to, telephone calls and personal visitations in the control of or possession of Defendants, which was in effect at any time during the two (2) years prior to the filing of this lawsuit.

**Response To RFP No. 9:** See response to Request No. 8.

**Reason why RFP No. 9 is objectionable**: As written, plaintiff's Request is asking for each and every document concerning collections. NCO is in the business

of debt collection; therefore, virtually every document in NCO's possession, custody, or control would be responsive to this Request. Second, only those policies and procedures related to the handling of bankruptcy and/or attorney representation notification are relevant to this lawsuit. Furthermore, NCO has no present ability to understand what documents and items would include "telephone calls and personal visitations." Additionally, this Request requires the production of proprietary and confidential documents and items.

Plaintiff's Requests are patently burdensome and overbroad. NCO is the largest debt collection company in the world with offices in numerous states within the United States and offices in Canada, India, Barbados, etc. servicing hundreds of clients. NCO was incorporated in 1966. Over the past 40 years, NCO has created countless documents containing information regarding collection activities, collection procedures, and collection practices that reference the terms quoted in the Requests. Most of these documents would be irrelevant to this lawsuit because virtually every manual, instruction, regulation, handbook, document, book, record, instruction, and memoranda produced by NCO would have to be produced in that they all pertain to collection activities, collection procedures, and collection practices.

Also, plaintiff does not limit her Requests to the documents and items from the specific office from which she was contacted; therefore, her Requests are overbroad as to geography. In addition, policies and procedures vary depending on the creditor that placed the account for collection. Plaintiff does not restrict the Requests to a particular creditor or even a group of creditors and therefore the

Requests are overbroad in scope. Finally, plaintiff does not limit her Requests to the documents and items pertaining to NCO's training, policy, and/or procedures with regard to the handling of notices of bankruptcies and/or notices of attorney representation; therefore, her Requests are overbroad in scope.

Nonetheless, to the extent that NCO was able to understand and interpret the Requests and in the spirit of cooperation, NCO agreed to produce potential responsive documents and items upon receipt of an executed confidentiality agreement. *See* Composite **Exhibit A** (NCO's October 2, 2006 letter to plaintiff with enclosed Proposed Stipulated Confidentiality Agreement). Despite that the requested agreement did not prejudice plaintiff or her counsel in any way with the prosecution of the case, Plaintiff counsel refused to execute such an agreement.

On October 16, 2006, counsel for both parties conducted their first and only meaningful conference to discuss this discovery issue. Counsel for plaintiff initially refused to give a reason for his refusal to execute a confidentiality agreement but then stated that he would not sign such an agreement because "NCO was the devil, and he did not deal with the devil." Notwithstanding counsel's aspersions, counsel for NCO agreed to produce those portions of NCO's debt collection manuals, policies, procedures, and regulations pertaining to standard operating procedures for handling notices of bankruptcy and notices of attorney

representation, which are the sole issues regarding whether there was or was not an FDCPA and/or bankruptcy stay violation. NCO did in fact produce those documents. See Composite **Exhibit B** (NCO's October 17, 2006 letter to plaintiff with enclosed Production). With regard to any remaining documents or items contained in NCO's manuals, policies, procedures, etc., aside from their dubious relevance, NCO maintains that they contain corporate proprietary information and will not be produced absent some assurance of confidentiality.

The debt collection business is highly competitive, and the items and documents requested contain information competitors would like to acquire. Training materials and collection policies, procedures, and regulations are proprietary in nature and the disclosure of these materials potentially would allow competing collection agencies to appropriate NCO's corporate training and testing materials and corporate policy, procedure, and regulations at no cost to the competitors.

The confidentiality agreement merely seeks to limit the use of documents marked confidential solely for the prosecution, defense or settlement of the case, and limits disclosure of the documents to counsel for the parties, the parties themselves, their officers, directors, or employees, or to any expert witnesses. *See* **Exhibit A** (Letter with attached Proposed Stipulated Confidentiality Agreement).

There is no prejudice to plaintiff in the execution of a confidentiality agreement or the entry of an order.

NCO requested that plaintiff sign the Stipulated Confidentiality Agreement in order to protect its internal documents containing company policies and procedures from improper distribution and use. NCO can only conclude that plaintiff and her counsel's refusal to agree to confidentiality indicates that plaintiff and/or her counsel intend to use NCO's company policies/documents for purposes outside the litigation of this lawsuit. The agreement would ensure that NCO's internal documents are protected against unnecessary disclosure and not used for purposes outside this litigation, while at the same time provide plaintiff with the documents she seeks. *See Ex parte Knox Kershaw*, 562 So.2d at 253.

The use of confidentiality agreements is proper, and numerous courts have found them to be valuable tools in balancing corporate and proprietary interests with discovery and litigation interests. *See Brassell v. Turner*, 2006 WL 1806465 (S.D. Miss. 2006); *Fidelity & Guaranty Ins. Underwriters, Inc. v. Wells Fargo Bank, N.A.*, 2006 WL 1050659 (S.D. Tex. 2006).

Furthermore, Fed. R. Civ. P. 26(c)(7) provides that the court may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including banning or restricting the

production of trade secrets or other confidential research, development, or commercial information. *Phillips ex rel. Estates of Byrd v. G.M. Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002); *Synthes (U.S.A.) v. Globus Medical, Inc.*, 2006 WL 39243 *1 (E.D. Penn. 2006); *Sherwin-Williams Co. v. Spitzer*, 2005 WL 2128938 *12-18 (N.D. N.Y. 2005).

Courts may consider 4 factors in deciding whether or not to enter a protective order, and they are: (a) the extent to which information is known outside the business; (b) the extent to which information is known to those inside the business; (c) the measure taken to guard the secrecy of the information; and (d) the value of the information to the business and its competitors. *Sherwin-Williams*, 2005 WL 2128938 at *12.

Here, NCO has created training manuals, policies, and procedures with regard to debt collection. *See* ¶ 1 **Exhibit C** (Affidavit). NCO uses significant efforts to prevent its training materials from leaving it facilities by ensuring that all employees understand the confidentiality. *See* ¶ 1 **Exhibit C** (Affidavit). The Training Manual and various other materials and policies contain corporate proprietary information of which NCO has committed countless hours, significant resources and effort to design, create, and keep confidential and to prevent public dissemination. *See* ¶ 2 **Exhibit C** (Affidavit). It is impossible to estimate the

Case 1:06-cv-00403-WHA-WC    Document 22    Filed 10/18/2006    Page 10 of 13

initial and on-going cost to develop such materials, since dozens of professionals and operational personnel have been involved dedicating an estimated hundreds of hours drafting, refining and checking to ensure that the Manual and related materials will assist NCO's representatives. *See* ¶ 2 **Exhibit C** (Affidavit).

Because of the amount of time, effort, and resources used to create the NCO corporate proprietary information and keep it confidential, except upon the request of regulators that oversee NCO's compliance obligations and clients who have committed to confidentiality, NCO has not disclosed the entire Manual or its training materials to anyone outside of NCO, absent a confidentiality agreement or court order. *See* ¶ 3 **Exhibit C** (Affidavit). NCO prohibits any of its representatives from keeping any training materials that they receive upon leaving NCO. *See* ¶ 3 **Exhibit C** (Affidavit).

NCO is the largest debt collection company in the world and its competitors would like to acquire NCO's corporate proprietary training materials at no cost. *See* ¶ 4 **Exhibit C** (Affidavit). If the confidential training items were disclosed to third parties, it would be virtually impossible to prevent their dissemination. *See* ¶ 5 **Exhibit C** (Affidavit). In light of today's technology, *e.g.,* computers, scanners, faxes, etc., it would take minimal effort to send the information to thousands of people or to post the information on web sites, chat rooms, and blogs. *See* ¶ 6

**Exhibit C** (Affidavit). Third party disclosure of NCO's debt collection manuals, policies, and procedures, would place NCO at a disadvantage with competitors, since competitors would gain NCO's work product at no cost. *See* ¶ 7 **Exhibit C** (Affidavit).

Additionally, even absent a showing that the discovery requested is confidential proprietary information, a court may still grant an order of protection. *Sherwin-Williams,* 2005 WL 2128938 at *12. Some documents are obviously confidential in nature and deserving of protection regardless of what a party alleges or proves about them. *Id.* at *13. Because of the resulting harm in disclosure of such information, "the equities of the parties are best balanced on the fulcrum" of a protective order. *Id.*

The law gives district courts discretion and broad latitude to grant protective orders to prevent the disclosure of confidential proprietary information. *Phillips*, 307 F.3d at 1211. This Court should grant such a protective order with regard to NCO's confidential proprietary information and for such other relief as this Court deems just and proper.

## CONCLUSION

Plaintiffs Requests for Production No 8 & 9 are patently overbroad, ambiguous, seek irrelevant information, and require the production of corporate proprietary information. After the one and only meaningful conference whereby counsel for the parties discussed this discovery issue, NCO produced the relevant documents and items. At all times, despite the dubious relevance, NCO has agreed to produce the requested items and documents to plaintiff upon the execution of a confidentiality agreement. The agreement allows the documents and items to be used in this litigation and viewable without restriction by plaintiff, her counsel, counsel's staff, any expert witnesses, and the court and its staff. As such, NCO's position with regard to this discovery dispute has been reasonable. There is no harm to plaintiff in requiring the parties to sign the confidentiality agreement or in entering a protective order. Therefore, NCO requests that the Court deny plaintiff's Motion to Compel, or in the alternative, enter a protective order requiring plaintiff and her counsel execute a confidentiality agreement before compelling NCO to produce its confidential and proprietary corporate documents and items.

DATED this 18th day of October, 2006.

*s/Laura C. Nettles*
Laura C. Nettles, Esq. (ASB-5805-S63L)
Attorney for Defendant,
NCO Financial Systems, Inc.

**OF COUNSEL:**
LLOYD, GRAY & WHITEHEAD, P.C.
2501 20th Place South, Suite 300
Birmingham, AL  35223
Telephone: (205) 967-8822
Facsimile:   (205) 967-2380

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document to all attorneys of record by electronically filing the foregoing document with the United States District Court, Middle District of Alabama on this the  18th  day of  October , 22006:

David G. Poston, Esq.
BROCK & STOUT
Post Office Drawer 311167
Enterprise, Alabama 35331

*s/Laura C. Nettles*
Of Counsel