# EXHIBIT "B"



**SESSIONS**
**FISHMAN**
**& NATHAN**LLP

A T T O R N E Y S
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
www.sessions-law.com

KENNETH C. GRACE
Office: 813-890-2465
Fax: 813-889-9757
kgrace@sessions-law.com
Respond to Tampa Office

October 17, 2006

<u>Via Fax:  334-671-2689 & U.S. Regular Mail</u>

David G. Poston, Esq.
Michael D. Brock, Esq.
Gary Wyatt Stout, Esq.
803 East Lee Street
Enterprise, Alabama 36330

    Re:   *Meredith L. Jansen v. NCO Financial Systems, Inc., et al.*
           **No. 06-CV-403-VPM, USDC, Middle District of Alabama, Southern Division**

Dear Counselors:

      Yesterday, we had our first meaningful conversation whereby we discussed the issues set forth in your motion to compel and our request for the execution of a confidentiality agreement. While we continue to maintain that all manual, policies, procedures, etc. contain corporate proprietary information, in light of the allegations of post attorney notification contact, post bankruptcy contact, and our bona fide error affirmative defense, we are producing those portions of our training manual and related materials governing debt collection following attorney representation notification and/or bankruptcy notification. See attached document production (Bates 1-24). Pages not produced and the redacted portions of pages produced contain information not relevant to this lawsuit.

      Please call with any questions.

               Sincerely,

               David Israel, Esq.
               Signed by Kenneth C. Grace, Esq. to prevent delay

DI:kcg
enclosure
cc:    Laura Nettles, Esq.
        Kenneth C. Grace, Esq.

**LOUISIANA**
201 St. Charles Ave.
Suite 3500
New Orleans, LA 70170-3500
Tele:  (504) 582-1500
Fax:  (504) 582-1555

**LOUISIANA**
Lakeway Two, Suite 1240
3850 N. Causeway Blvd.
Metairie, LA 70002-1752
Tele:  (504) 828-3700
Fax:  (504) 828-3737

**FLORIDA**
9009 Corporate Lake Drive
Suite 300-S
Tampa, FL 33634-2367
Tele:  (813) 890-2461
Fax:  (813) 889-9575

**ILLINOIS**
SFN of Illinois, L.L.C.
1000 Skokie Blvd., Suite 430
Wilmette, IL 60091
Tele:  (847) 853-6100
Fax:  (847) 853-6105

**CALIFORNIA**
SFN in California, L.L.P.
3667 Voltaire St.
San Diego, CA 92106
Tele:  (619) 758-1891
Fax:  (619) 222-3667



# Collector Training Manual

**Corporate Business Headquarters**

**Horsham, Pennsylvania**

**1-800-220-2274**

**Corporate Legal Department**

**Getzville, New York**

**1-800-227-4000**

**May 2002**

000001

**NCO**®

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o"clock antimeridian and before 9 o"clock postmeridian, local time at the consumer"s location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney"s name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer"s place of employment if the debt collector knows or has reason to know that the consumer"s employer prohibits the consumer from receiving such communication.

(b) Communication With Third Parties. - Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

(c) Ceasing Communication. - If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except -

(1) to advise the consumer that the debt collector"s further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. If such notice from the consumer is made by mail, notification shall be complete upon receipt.

(d) For the purpose of this section, the term "consumer" includes the consumer"s spouse, parent (if the consumer is a minor), guardian, executor, or administrator.

## § 806. Harassment or abuse [15 USC 1692d]

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3)[1] of this Act.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 804, the placement of telephone calls without meaningful disclosure of the caller"s identity.

## § 807. False or misleading representations [15 USC 1692e]

A debt collector may not use any false, deceptive, or misleading representation or means in



*NCO Financial Systems, Inc.®*

the responsible party on the debt but that individual's spouse, parent, etc., from unlawful communication by a debt collector.

### Allowable Time of Day for Contacting Consumers

Without the prior consent of the consumer given directly to the debt collector or permission of a court, you may not communicate at a time or place known or which should be known to be inconvenient to the consumer. In the absence of more specific information, you should not call before 8 a.m. or after 9 p.m. in the consumer's local time zone. A map of time zones is provided at the end of this section.

### When a Consumer is Represented by an Attorney

You may not contact a consumer after learning that an attorney represents the consumer, unless you receive the attorney's permission to do so. When you learn that an attorney represents a consumer or when you can readily identify the attorney's name and address, you should document the attorney's name, address and telephone number in the collection system.

When a consumer tells you that he or she has an attorney, you should contact the attorney and confirm that he or she represents the consumer. This step is unnecessary when a letter of representation is received from an attorney or if an attorney contacts us verbally with this information. Do not make any further efforts to contact the consumer by letter or by telephone *under any circumstances* unless:

1. You are authorized to do so by the attorney

2. You are notified by either the consumer or the attorney that the consumer is no longer represented by the attorney.

The FDCPA does *not* define what a reasonable period of time is for the attorney to respond to the debt collector.

### Communication at the Consumer's Place of Employment

You may not communicate with the consumer at his or her place of employment if you know or should know that the employer disapproves of personal calls at work. You know or should know that communication at the place of employment is prohibited if:

♦ You are informed of this by the consumer.

♦ You attempt to contact the consumer and are so informed by a third party.

Based on the consumer's occupation, it is generally known that certain types of workers are not allowed calls at work except in an emergency. Examples of this include, but are not limited to teachers, fast-food workers, surgical nurses, and factory workers.

### Third Party Communications

You may discuss the debt or imply that the debt exists only with the consumer, the spouse, the consumer's attorney, a credit-reporting agency if allowed by law, the creditor, creditor's attorney, or the debtor's attorney. You may discuss the debt with

 **NCO**®

*NCO Financial Systems, Inc.*®

# Miscellaneous Debt Collection Issues

## Introduction

This section includes various topics that affect your daily business conduct. Contact NCO's Corporate Legal Department for further information or clarification on any of these topics.

## Tape Recording Telephone Calls

In the event that your location tape records telephone calls, it is NCO's policy that the caller be immediately advised that recording of the conversation is occurring and verbal consent is received from the individual. The following statement is to be given to the caller:

> *"For your information, this call is being recorded for quality control. Do you understand this?"*

In the event that an individual refuses to be tape recorded, transfer the telephone call to a nonrecorded line and notify a supervisor to either handle the telephone call or monitor your conversation. Please check with the manager of your location concerning whether your office is equipped with tape recording capabilities.

## Bankruptcy Terms and Definitions

| Bankruptcy Term | Definition |
| --- | --- |
| Abandonment | A disclaimer of any interest by the trustee or consumer in burdensome or inconsequential property. Once property has been "abandoned," it is no longer property of the estate, and parties with a security interest in the property may proceed against it. |
| Administrative Expense Claim | A priority claim including the cost and expenses of preserving the estate or operating the business after the petition, and all professional fees and charges that are allowed. |
| Adversary Proceeding | A lawsuit within a bankruptcy case to determine rights in collateral, recover assets or obtain other judicial relief from the bankruptcy court having jurisdiction. |



| Bankruptcy Term | Definition |
|---|---|
| Asset Case | A case that consists of an estate with sufficient nonexempt, non-fully encumbered assets to potentially provide a distribution for unsecured creditors. |
| Automatic Stay | The filing under any chapter of the Bankruptcy Code automatically operates as a stay against the commencement or continuation of most judicial, administrative or other proceedings against the consumer or the consumer's estate. The purpose of the stay is to give the Chapter 11 or Chapter 13 consumer "breathing time" for rehabilitation, and to give the Chapter 7 Trustee the protection necessary for administering the assets of the estate, and to relieve the Chapter 7 consumer from the pressure of creditor collection efforts. The stay also bars collection of the debt from guarantors and other co-consumers without relief from the court. The law provides a number of exceptions to this general rule. A party seeking relief from the automatic stay must file a motion to lift stay. Continuing collection actions without a court approval may result in a contempt finding and damages. |
| Avoidance Power | The Bankruptcy Code grants the trustee the power to avoid certain transactions or transfers occurring before the commencement of the case, including preferences and fraudulent conveyances. |
| Bankruptcy Code ("The Code") | Legislation found at 11 U.S.C. Section 101 et seq. ("Title 11") containing both substantive and procedural law for bankruptcy liquidation and rehabilitation cases. The Code has been amended several times since its passage in 1978. |
| Bankruptcy Court Clerk | The clerk at the bankruptcy court receives and maintains all documents that are placed in the court record in a bankruptcy case. Copies of the consumer's schedules and lists of assets may be obtained from the clerk upon written request. In addition, the clerk's office schedules hearings for the bankruptcy judges, usually upon written request by an attorney. |
| Bankruptcy Judge | The role of the bankruptcy judge is to preside over the administration of a bankruptcy case, and to decide contested aspects of that case, which involve either the liquidation or reorganization of a consumer. A bankruptcy judge does not become actively involved in the daily administration of the bankruptcy case, as that task has been delegated to the consumer, U.S. Trustee, appointed trustees, examiners and creditors' committees. |
| Cash Collateral | Cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the consumer's estate and an entity other than the estate have an interest. Cash collateral may not be used, sold or leased in the ordinary course of business unless the creditors with an interest in the collateral or the court, after notice and a hearing, authorizes the transaction. |
| Chapters of the Bankruptcy Code: | |
| Chapter 7 | Chapter of the Code addressing liquidation and available to both individual and business consumers. Its purpose is to achieve a fair distribution to creditors of whatever nonexempt property the consumer has and to give the individual consumer a fresh start through the discharge in bankruptcy. |



| Bankruptcy Term | Definition |
|---|---|
| Chapter 11 | Chapter of the Code addressing reorganization and available for both individual and business consumers. The purpose of Chapter 11 is to rehabilitate a business as a going concern or reorganize an individual's finances. The Chapter 11 consumer is given a fresh start through the binding effect on all concerned of the order of confirmation of a reorganization plan. |
| Chapter 12 | Chapter of the Code designed to give special relief to a family farmer with regular income. |
| Chapter 13 | Chapter of the Code used as a rehabilitation vehicle for an individual with regular income whose debts do not exceed specified amounts, typically used to budget some of the consumer's future earnings under a plan through which creditors are paid in whole or in part. |
| Claim | Any right to payment, as well as any right to an equitable remedy for breach of performance if that breach also gives right to payment. Claims can be either secured or unsecured. |
| Confirmation | The process by which the bankruptcy judge approves a plan of reorganization of a consumer. |
| Cramdown | A method by which a consumer can confirm its reorganization plan over the objections of creditors, where at least one class of impaired claims or interests have voted in the requisite number and amount to accept the plan, and certain other requirements are met with respect to all non-consenting impaired classes or claims or interests. |
| Creditor | Any entity that has a monetary claim against the consumer that arose at the time of or before the order for relief entered as a result of the filing of the petition. |
| Creditors' Committee | A group of unsecured creditors appointed by the U.S. Trustee to represent the interests of all unsecured creditors before the court. The committee may retain counsel and other professionals at the expense of the estate in order to be heard in a wide range of matters. |
| Debtor | The person or entity who seeks voluntary relief under the Bankruptcy Code, or has been forced involuntarily into a Chapter 7 or 11 bankruptcy case by petitioning creditors. |
| Debtor-In-Possession | A Chapter 11 or Chapter 12 debtor that operates its own business and remains in possession of its assets and property. For purposes of the Code, a debtor-in-possession has substantially all the rights and powers of a trustee. The bankruptcy judge may order that the debtor-in-possession be replaced by a trustee appointed by the U.S. Trustee. |
| Discharge | A court order that bars the debtor's personal liability on claims within its scope, and acts as a permanent injunction against judicial proceedings or nonjudicial collection efforts with respect to such claims. Creditors may oppose the discharge of certain debts. |
| Dischargeability | Refers to a process or finding on whether each individual debt is eligible for discharge. |



| Bankruptcy Term | Definition |
|---|---|
| **Drop-Dead Agreement** | An agreement by which a debtor agrees to allow a creditor to effect relief from bankruptcy (*i.e.*, a lift of the automatic stay) upon the occurrence of some breach or default, without the need of a further court hearing. These agreements generally arise out of the settlement of a dispute between the debtor and creditor, and generally must receive specific court approval. |
| **Estate** | Created by the filing of a voluntary, joint or involuntary petition and consisting of all of the debtor's legal and equitable interest in property as of the commencement of the case. An individual debtor is able to exempt certain property from the estate. Property of the estate also does not include (1) any power that a debtor can exercise for someone else's benefit; and (2) traditional spendthrift trust interests required by state law. The estate is administered by a debtor, a debtor-in-possession or a trustee. |
| **Exemptions** | A debtor's claims that remove certain property (such as homestead rights or household goods) from the bankruptcy estate. The debtor retains exempt property free from the claims of its creditors. |
| **Federal Rules of Bankruptcy Procedure** | Provides the procedural law of bankruptcy. Besides the Federal Rules of Bankruptcy Procedure, each district, as well as each individual bankruptcy judge, may have its own local rules. |
| **Fraudulent Conveyance** | A transfer that can be avoided by the trustee if the transfer was made with (1) actual fraud evidenced by an intent to defraud, hinder or delay creditors; or (2) constructive fraud, evidenced by the debtor's receipt of less than reasonably equivalent value in exchange for the transfer. |
| **No-Asset Case** | A case without sufficient nonexempt non-fully encumbered assets to potentially provide a distribution to unsecured creditors. |
| **Objection to Claim** | The filing of an objection to a claim initiates a process that ultimately will result in the allowance or disallowance of that claim by the bankruptcy court. |
| **Petition, Voluntary** | When a debtor voluntarily seeks relief under one of the chapters of the Bankruptcy Code. The filing of the petition operates automatically to invoke the stay. |
| **Petition, Involuntary** | When creditors file a petition seeking to place the debtor in either Chapter 7 or 11. If the debtor contests and prevails, the court shall dismiss the involuntary petition. If the debtor does not contest, or contests and loses, the bankruptcy court shall enter an Order of Relief. |
| **Plan of Reorganization** | The document the debtor submits for confirmation to restructure and perhaps forgive pre-petition debt. The debtor proposes plans in Chapter 11, Chapter 12 and Chapter 13. The Chapter 13 plan used in consumer cases generally will define the value of the collateral, the repayment terms and the interest rate. It also may provide for the cure of defaults in payments under a promissory note. |





| Bankruptcy Term | Definition |
|---|---|
| Preference | A transfer of the debtor's property to or for the benefit of a creditor, for or on account of an antecedent debt, made while the debtor was insolvent, within 90 days before bankruptcy (or within one year before the petition was filed in an "insider" situation), and the effect of which was to give the creditor more than he would have otherwise received in a Chapter 7 distribution. The trustee's power to avoid preferences is designed to achieve the policy of fostering equality of distribution among the creditors of an insolvent debtor. |
| Priority Claim | Unsecured claims entitled to priority and distribution over other unsecured claims, including administrative expenses, claims arising in the ordinary course of the debtor's business after the filing of an involuntary petition and before the entry of the Order of Relief; certain wage, salary or commission claims; certain contributions to employee benefit plan; certain claims of farmers and fishermen; certain consumer claims of up to $900; and certain unsecured tax claims. |
| Property of the Estate | Includes real and personal property, tangible and intangible property, and property which the debtor has an interest held by others. Property acquired after the petition generally is not property of the estate. |
| Proof of Claim | Document filed by a creditor, together with all supporting evidence of such claim, including documentation reflecting perfection of a security interest, if any. There is usually a deadline in which to file a Proof of Claim. |
| Reaffirmation | Method of keeping property where the debtor agrees to continue making scheduled payments on debts that might otherwise be discharged in bankruptcy. Generally, debtors will reaffirm on secured loans. They may reaffirm on unsecured loans, but rarely do so unless there is a basis for objecting to discharge. |
| Redemption | When an individual debtor reclaims property intended primarily for personal, family or household use, from a lien securing a dischargeable consumer debt, if the property is exempt, or has been abandoned, by paying the lien holder the amount of the allowed secured claim of the lien holder that is secured by such lien. Redemption must be a cash transaction, unless the creditor consents to a payout over time. |
| Secured Claim | Claim by a creditor that has an interest in collateral of equal or greater value than the amount of the claim. Entitle to special treatment in the bankruptcy. |
| Setoff | A right that may exist to freeze or set off debts owed to a creditor against the liability of the debtor. |
| Trustee | The court-appointed representative of the estate who actually administers the estate. A Chapter 7 Trustee is in charge of liquidating the estate. In some Chapter 11 cases, the debtor-in-possession is replaced by a Chapter 11 Trustee who administers the estate. In Chapter 13, there ordinarily is at least one standing trustee in each district whom all cases under Chapter 13 are assigned. |
| Unsecured Claims | Claim by a creditor that has no collateral to secure its claim or that has collateral of lesser value that the amount of the claim. |



# NCO®

# Collections Training

## Ensuring Knowledgeable and Productive Representatives

Access the Power of...
INCOME SOLUTIONS

www.ncogroup.com



# Skiptracing Procedures

- Identify yourself by name only
- Do NOT indicate you are collecting a debt
- State that you are trying to locate the person
- Ask for only the consumer's home address, home phone number, and place of employment
- Contact should ONLY be made to the consumer's attorney if you know the consumer is represented by an attorney

000010

17



# FDCPA Communication

- Consumer
- Third party
- Consumer's spouse
- Consumer's attorney



000011



# Third Party Contacts

- Debt collectors may NOT communicate about the collection of a debt with a third party without the consumer's prior consent.

- Exceptions:
  - Consumer's attorney
  - Creditor's attorney
  - Credit bureau
  - Consumer's spouse (State law permitting)
  - Consumer's parent (if the consumer is a minor)
  - Consumer's guardian/executor/administrator
  - Collection agency's attorney

000012

24

# Communication with an Attorney

- If a debt collector discovers that the consumer is represented by an attorney in connection with this debt, the collector must contact only the attorney and not the consumer or any party UNLESS:

  – The attorney gives consent to the debt collector to communicate with the consumer



000013



# COLLECTOR TRAINING

## Presentation Workbook

May 2002

000014





_____

_____

_____

_____

_____

_____

_____

_____

000015

 **NCO** NCO Financial Systems, Inc.

## Third Party Contacts

- Debt collectors may NOT communicate about the collection of a debt with a third party without the consumer's prior consent.
- Exceptions:
  - ✓ Consumer's attorney
  - ✓ Creditor's attorney
  - ✓ Credit bureau
  - ✓ Consumer's spouse
  - ✓ Consumer's parent (if the consumer is a minor)
  - ✓ Consumer's guardian/executor/administrator
  - ✓ Collection agency's attorney

**NCO** Access the Power

000016

**NCO°**

*NCO Financial Systems, Inc.°*

## Communication with an Attorney

- If a debt collector discovers that the consumer is represented by an attorney in connection with this debt, the collector must contact only the attorney and not the consumer or any party UNLESS:
  - ✓ The attorney gives consent to the debt collector to communicate with the consumer

**NCO**

*Access the Power*

18

_____

_____

_____

_____

_____

_____

_____

_____

000017



_____

_____

_____

_____

_____

_____

_____

_____

000018

**NCO**°                                                      *NCO Financial Systems, Inc.*●

## *Guidelines-Bankruptcy*

- If the consumer tells you that he or she has filed bankruptcy, ask the following questions and note the answer:
  - ✓ "Who is (was) the attorney that handled the bankruptcy?"
  - ✓ "What is the phone number?"
  - ✓ If the consumer does not have the attorney's phone number, then ask: "What law firm is the attorney with and what city is it in?"
- Call the attorney's office and have the "Bankruptcy Petition" and the "List of Creditors" faxed or mailed
- Give account to supervisor – "Recommend close – Bankruptcy (chapter # and case #)"

**NCO**
Access the Power
102

000019

 **NCO**®

*NCO Financial Systems, Inc.*®

## Statement of Company Policy
### In Connection with Contact with the Public (Rev 2/02)

The purpose of our Company is to assist our clients in resolving their accounts receivable problems by working with consumers and other debtors who may have difficulty in paying their accounts. NCO personnel will strive to understand the consumer's problems and determine solutions. NCO staff will endeavor to motivate payment expeditiously while operating in a professional and courteous manner. The following policy reflects this philosophy. All employees of this Company understand and support this policy and indicate their acceptance and adherence by signing this statement of policy.

**Basic Statement of Policy**
All collection practices and any other dealings of this Company are to conform to the following:
1. Conform to the Fair Debt Collection Practices Act (FDCPA) (PL95-109 as amended);
2. Comply with Company policy pertaining to the privacy of consumer information and the Gramm-Leach-Bliley Act (GLBA);
3. Comply with all state laws governing debt collection;
4. Comply with all applicable federal rules and regulations; and
5. Conform to the Code of Ethics and Operations of the American Collectors Association, Inc., whether contacting consumers, creditors, other collectors or any other person.

**Employee Code of Operations**
1. In connection with complying with all the provisions of the Fair Debt Collection Practices Act (PL95- 109), employees must pay particular attention to the following items:
   a. Employees may not discuss the debt with anyone other than the consumer or those individuals allowed by law to have knowledge of the account. The debt must never be discussed with a third party when attempting to locate an individual;
   b. When permitted by state law, employees may contact a consumer's employer for the purpose of verifying location information, but any information with regard to an amount owed must not be discussed with the employer; and
   c. Employees must respond to disputes submitted in writing by the consumer with reasonable and understanding consideration and in full compliance with federal and state law.
   d. Employees will not misrepresent themselves or make false or misleading statements that would lead consumers to believe that they are dealing with anyone other than a debt collector.
2. In connection with complying with the Gramm-Leach-Bliley Act, employees are not permitted to share information about consumers with outside sources during the course of skiptracing. This protected information includes, but is not limited to, telephone numbers, addresses, places of employment, or Social Security numbers. While this information can be **obtained** from a source or creditor, employees may not **provide** such information to a source or a creditor. Employees should advise any source or creditor that is requesting this information that company policy prohibits its distribution.
3. Employees must not alter or deface documents entrusted to the Company by clients or consumers.
4. Employees are responsible to make themselves aware of the laws in the states where they are contacting the public and to comply with those laws in locating individuals and in the collection of accounts.
5. Employee understands that the Company will monitor complaints received from consumers and other parties. Should the frequency of complaints indicate that certain employees are conducting themselves in a manner contrary to this Statement of Policy and Code of Operations, the employee agrees that, at the Company's discretion appropriate forms of counseling, remedial training, and/or disciplinary action, up to and including termination, may be appropriate and necessary.
6. Employee understands that the Company may monitor telephone calls undetectably to ensure that compliance with all disclosures and provisions of the Fair Debt Collection Practices Act (PL95-109) and other relevant and applicable state and federal laws is maintained.

I have read the preceding Statement of Policy and Code of Operations and fully understand their meaning. I have read and received training in the FDCPA, the Gramm-Leach-Bliley Act, and other pertinent statutes. I certify that I understand the spirit as well as the letter of these laws and will comply with them in all regards. In the event that a question arises, I will bring the matter to my supervisor immediately before acting. Compliance with this policy and any future policy is agreed to during my employment with NCO Financial Systems, Inc. I also hereby acknowledge receipt of the Collector's Reference Guide and related training materials provided by NCO Financial Systems, Inc.

Employee Signature _____    Date _____

Print Employee Name _____    Social Security Number _____



**RISK MANAGEMENT
ALTERNATIVES**

*Updated 7/8/03*

# Federal Fair Debt Collection Practices Act
# And State Law Acknowledgment

The undersigned is an associate employed by Risk Management Alternatives, Inc. (RMA). This certificate is for the purpose of indicating my acknowledgment and compliance with the Federal Fair Debt Collection Practices Act and State Laws.

I have received, thoroughly read and discussed with a member of management, a copy of the FDCPA Overview, which provides in detail collection policies and my compliance obligations under the state and federal collection laws and implementing regulations.

I am involved in the collection activity of RMA and as a condition of my employment, I have been instructed to familiarize myself with the FDCPA, and to comply with its provisions at all times and in all cases.

---

*I acknowledge receipt of the following information:*
**Debt collectors must comply with the Federal Fair Debt Collection Practices Act, which regulates the company's conduct in attempting to collect debts. Most importantly, Section 805(b) of the Act says that, unless the consumer consents, a debt collector may not discuss the debt with any person other than the consumer and a few other persons, such as the consumer's attorney or spouse. Individual debt collectors may be financially liable for their violations of the Act.**

---

*I further acknowledge*: 1) that compliance with all applicable state and federal debt collection laws and regulations has been a part of my initial training, 2) that any violation on my part of state and / or federal debt collection laws and regulations, will result in disciplinary action, up to and including, termination of my employment.

RAYAD  MOHAMMED
**Employee Name *(Please Print)***     **Employee Signature**     Aug 31 2004   **Date**

**Business Center Location:** RMA 45 TOR

---

*\*Forward original document to the Human Resources Department to be placed in the employee's personnel file.*

*\*Copy of this signed document must be maintained at the Business Center for audit purposes. (internal and client)*

---

# Collector Compliance Reminders

- **ALWAYS** state that your conversation "may be monitored or recorded for quality assurance"
- **ALWAYS** recite the "Mini-Miranda" and debt collector disclosures in every collection communication
- **ALWAYS** document and honor all disputes and "cease and desist" requests, whether notified verbally or in writing
- **ALWAYS** contact consumers only between 8:00 A.M. and 9:00 P.M., in the time zone where the consumer is located
- **ALWAYS** provide verification of the debt when requested
- **ALWAYS** properly credit all payments made by a consumer
- **ALWAYS** correctly document collection system with all consumer contact and activities and update all status/disposition codes

- **NEVER** disclose the existence of a debt to, or reveal collector status to a third party
- **NEVER** contact a third party to skiptrace more than once, unless to check new information, or with permission from the third party
- **NEVER** leave any message for a return call including anything other than your name, telephone number, and I.D. Code
- **NEVER** misrepresent yourself, or identify yourself as anything other than a debt collector
- **NEVER** harass, use profanity, or be rude to any consumer or third party
- **NEVER** improperly notify a consumer of potential legal action or a wage garnishment
- **NEVER** add additional charges to an account not permitted by state law, or the original agreement between the consumer and the creditor
- **NEVER** deposit postdated checks prior to the date the check was originally issued for, or modify the amount of the check without permission from the consumer
- **NEVER** contact the consumer at work if there is any reason to believe that the consumer may not receive calls at work
- **NEVER** contact a consumer, or send any letters to a consumer, who has a disputed account, or has requested verification of the debt, before the validation information has been provided
- **NEVER** contact a consumer that is represented by counsel
- **NEVER** leave a message after the consumer has been reached or with a nearby, other than the consumer's home or business numbers

H:\DP\NCO Regulatory Active\D. Whitcomb Training Materials\Collector Compliance Reminders.doc



 **NCO**

---

### INTEROFFICE MEMORANDUM

---

**TO:**      ALL NCO EMPLOYEES

**FROM:**   DOUGLAS WHITCOMB, DIRECTOR OF TRAINING

**SUBJECT:**  ATTORNEY REPRESENTATION AND POWER OF ATTORNEY POLICY

**DATE:**   AUGUST 2, 2004

---

In order to maintain compliance with applicable legislation and Company policy, it is mandatory that once a collector or any other employee of NCO discovers verbally or in writing that an attorney represents a consumer for bankruptcy or for any other reason all communication to that consumer must cease.

When a consumer has advised a collector that they are represented by an attorney or some other individual or organization that holds limited power of attorney, including consumer credit counseling organizations, all communication to a consumer must cease unless documented verbal or written permission (whichever is required by state law or other applicable legislation) has been received by the collector.

The misconception that a collector may attempt to contact a consumer again after a thirty-day period of non-contact with the representing party or organization is false. The FDCPA does not define what a "reasonable amount of time" is. Therefore, no communication with the consumer may take place without permission from the representing party or organization.

It is the responsibility of the collector to maintain proper account documentation that clearly indicates all of the information regarding the representing party of the consumer. The collector is permitted to contact the representing party or organization to:

1.   Verify that the attorney or organization with limited power of attorney does in fact represent the consumer for the account in collections.
2.   Attempt to collect the debt through the third party representing the consumer *if* the intention of the representation is to resolve the account by making payment arrangements with the consumer's creditors or their agents (i.e., NCO).
3.   Obtain bankruptcy information from the attorney to properly notate the account. The collector is required to change the status/disposition on the collection system to reflect that the consumer is in fact filing bankruptcy. The collector should also obtain information regarding the chapter that is/was filed, case numbers, and also may request from the attorney a "list of creditors" and "bankruptcy petition" in order to verify that the account in collections is being included in the consumer's petition for bankruptcy.

Once the collector has verified that the attorney or representing party does represent the consumer for the account, all contact numbers for the consumer should be removed from the collection system and the address should be modified to send correspondence to the representing attorney or organization "care of" the attorney or representing organization.

With the cooperation of all associates, following these practices will ensure the best possible servicing of NCO's clients and protect the interest of the Company.

Employee Print Name  *RAYAD MOHAMMED*

Employee Signature  *[signature]*          Date  *10/10/05*

Memo 0004

000023

# NCO FINANCIAL SYSTEMS, INC.

## Fair Debt Collection Practices Act (FDCPA) Acknowledgement

I hereby acknowledge and represent that as an employee of NCO Financial Systems, Inc.:

A).  I understand it is a corporate policy that I shall comply with all federal and state laws and regulations concerning the collection of consumer debts and in particular with the FDCPA;

B)  I have previously been given a copy of The Act, and I have read it and understand its provisions;

C).  I have had the opportunity to question management about The Act and its application to my position of employment and the corporation;

D).  I have been given an annotated outline of The Act, which I have read and understand;

E).  I have attended a training seminar on The Act;

F).  I understand that as part of its procedures to insure compliance with the law and its own policies, NCO randomly monitors telephone communications by its employees, and that the telephone lines are to be used for business purposes only;

G).  I understand that a violation of the law and consequently corporate policy may subject me to prosecution and penalties under The Act or other laws as well as disciplinary action by NCO including dismissal of employment.

_11, 07, 05_
Date

X _Cay Cay Raumitt_
Signature

_RAYAD MOHAMMED_
Print Name

000024